1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

7

JANET HILLER,

8

Petitioner,

9

v.

10

ATTORNEY GENERAL OF THE

11

STATE OF NEVADA, *et al*.,

12

Respondents.

13

Case No. 2:19-cv-00260-RFB-EJY

**ORDER**

14    In this habeas corpus action, Respondents move to dismiss Petitioner Janet Hiller's Third

15    Amended Petition ("Petition") for writ of habeas corpus (ECF No. 46), arguing that her entire

16    Petition is barred by the statute of limitations and that two of her claims are procedurally defaulted.

17    ECF No. 66. For the following reasons, the Court denies Respondents' motion to dismiss as well

18    as Hiller's related motion for leave to conduct discovery (ECF No. 79) and motion for evidentiary

19    hearing (ECF No. 81).

20

21    **I.    BACKGROUND**

22    In 2015, Hiller was charged by with one count of establishing or possessing a financial

23    forgery laboratory. ECF Nos. 56-3, 56-5. A jury found her guilty of that crime. ECF No. 57-7. She

24    was sentenced to a term of 60 to 180 months in prison. ECF No. 57-10. The judgment of conviction

25    was entered August 28, 2015. Id.

26    Hiller appealed, and the Nevada Court of Appeals affirmed the judgment of conviction on

27    July 26, 2016. ECF No. 57-31.

28    On October 13, 2017, Hiller filed a *pro se* habeas petition in the state district court. ECF

No. 58-7. The state district court denied the petition as procedurally barred under the state statute of limitations, NRS 34.726(1). ECF No. 58-14. Hiller appealed and the Nevada Court of Appeals affirmed on October 25, 2018. ECF No. 58-21. The remittitur issued on November 19, 2018. ECF No. 58-23.

Hiller then initiated this action by submitting a *pro se* petition for writ of habeas corpus to this Court for filing. ECF No. 6. Hiller alleges that she mailed that petition to the Court for filing on January 30, 2019. Id. at 1. The Court appointed counsel for Hiller, ECF No. 5, and, with counsel, Hiller filed her first amended petition on June 28, 2019, ECF No. 12, and second amended petition on March 16, 2020. ECF No. 24.

On May 6, 2020, Hiller moved to stay this action so that she could pursue further state court proceedings before proceeding with this action. ECF No. 36. Respondents did not oppose the motion for stay, and the Court granted the motion and stayed this action on May 22, 2020. ECF No. 37.

Hiller then filed a second state habeas petition in the state district court on May 26, 2020. ECF No. 58-29. The court denied Hiller's petition, ruling it procedurally barred under NRS 34.726(1) (statute of limitations) and NRS 34.810(2) (successive petitions). ECF No. 59-12. Hiller appealed, but after filing an opening brief Hiller agreed to withdraw the appeal, and the appeal was dismissed on August 19, 2021. ECF Nos. 60-11, 60-12.

Hiller then initiated a third state habeas action on October 28, 2021. ECF No. 60-14. The state district court denied that petition, ruling it procedurally barred under NRS 34.726(1) (statute of limitations), NRS 34.810(2) (successive petitions), and NRS 34.800 (laches). ECF No. 61-2. Hiller appealed, and the Nevada Supreme Court affirmed on October 12, 2023. ECF No. 61-26. The remittitur issued on November 6, 2023. ECF No. 61-28.

On June 8, 2022, while Hiller's third state habeas action was ongoing and the stay of this action was still in effect, Hiller submitted to this Court her Third Amended Petition, along with a motion for leave to file that amended Petition. ECF No. 40. The court granted Hiller leave to amend, and her Third Amended Petition was filed on December 8, 2022. ECF Nos. 45, 46. In the Third Amended Petition—her operative Petition—Hiller asserts the following claims of

violations of her federal constitutional rights:

>Ground 1: The prosecution committed misconduct during closing arguments.

>Ground 2: Hiller received ineffective assistance of trial counsel "when counsel failed to investigate and fully present Ms. Hiller's defense that she was innocent because she was working with Detective Queen."

>Ground 3: "[T]he State suppressed material and favorable evidence showing that Hiller was working for Detective Queen," and "the State knowingly presented false evidence at trial."

ECF No. 46. The stay was lifted on December 22, 2023. ECF No. 50. On May 7, 2024, Respondents filed the instant motion to dismiss, arguing that Hiller's Third Amended Petition is barred by the statute of limitations and that two of Hiller's claims, Grounds 2 and 3, are procedurally defaulted. ECF No. 66. The motion to dismiss is fully briefed. See ECF Nos. 76, 92. On November 27, 2024, Hiller filed a motion for discovery and a motion for evidentiary hearing. ECF Nos. 79, 81. Those motions are also fully briefed. ECF Nos. 89, 90, 96, 97.

## II.    LEGAL STANDARDS

### A.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) includes a one-year statute of limitations for federal habeas petitions by state prisoners under 28 U.S.C. § 2254. 28 U.S.C. § 244(d)(1). The one-year limitations period begins to run from the latest of four possible triggering dates, the most common being the date on which the petitioner's conviction became final by either the conclusion of direct appellate review or the expiration of time for seeking such review. Id. The one-year limitations period is tolled while a "properly filed" state post-conviction action or other collateral review proceeding is pending. 28 U.S.C. § 2244(d)(2). The limitations period resumes when the post-conviction judgment becomes final upon issuance of the state appellate court's remittitur. Jefferson v. Budge, 419 F.3d 1013, 1015 n.2 (9th Cir. 2005). An untimely state post-conviction petition is not "properly filed" and does not toll the limitations period. Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005).

///

1

## B.  Procedural Default

A federal court will not review a claim for habeas corpus relief if the state court's denial of relief on the claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729 (1991). The Coleman Court stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 485 (1986). The federal court must honor a state court ruling that is a sufficient basis for the state court's judgment if the state court "explicitly invokes a state procedural bar as a separate basis for decision." Harris v. Reed, 489 U.S. 255, 264, n. 10 (1989). And the state rule cited must have been "clear, consistently applied, and well-established at the time of the petitioner's purported default." Calderon v. United States Dist. Court for the E. Dist. of Cal., 96 F.3d 1126, 1129 (9th Cir. 1996).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" her efforts to comply with the state procedural rule. See Murray, 477 U.S. at 488. The external impediment must have prevented the petitioner from raising the claim. See McCleskey v. Zant, 499 U.S. 467, 497 (1991). To demonstrate prejudice, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to [her] actual and substantial disadvantage, infecting [her] entire [proceeding] with errors of constitutional dimension." White v. Lewis, 874 F.2d 599, 603 (9th Cir. 1989) (citing United States v. Frady, 456 U.S. 152, 170 (1982)).

Ineffective assistance of postconviction counsel, or lack of postconviction counsel, may serve as cause with respect to a claim of ineffective assistance of trial counsel. Martinez v. Ryan, 566 U.S. 1 (2012). "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal

1    habeas court from hearing a substantial claim of ineffective assistance of trial counsel if, in the

2    initial-review collateral proceeding, there was no counsel or counsel in that proceeding was

3    ineffective." Martinez, 566 U.S. at 17; see also Trevino v. Thaler, 569 U.S. 413, 423 (2013)

4    (discussing the showing necessary to overcome a procedural default under Martinez). Nevada law

5    requires prisoners to raise ineffective assistance of counsel claims for the first time in a state

6    petition seeking postconviction review, which is the initial collateral review proceeding for

7    purposes of the Martinez rule. See Rodney v. Filson, 916 F.3d 1254, 1259–60 (9th Cir. 2019).

8

9    **III.    DISCUSSION**

10    **A. Timeliness**

11    In this case, the AEDPA limitations period began to run on October 25, 2016, after the

12    ninety days for Hiller to petition the United States Supreme Court for certiorari ran out following

13    the Nevada Court of Appeals' affirmance of the judgment of conviction on direct appeal. Absent

14    any tolling, the one-year limitations period ran out on October 25, 2017.

15    Therefore, without any tolling, it is undisputed that Hiller's original habeas petition,

16    allegedly sent for filing on January 30, 2019; her first amended petition, filed June 28, 2019; her

17    second amended petition, filed March 16, 2020; and her Third Amended Petition, submitted for

18    filing June 8, 2022 were all untimely. See ECF No. 76 (Hiller arguing in response to the motion to

19    dismiss: "Janet [Hiller] agrees that her federal petition is untimely. Janet filed her *pro se* federal

20    petition fifteen months late. But that does not automatically mean her petition should be dismissed

21    as untimely.").

22    None of Hiller's three state habeas petitions tolled the limitations period under 28 U.S.C.

23    § 2244(d)(2); all three were ruled untimely and therefore were not "properly filed" within the

24    meaning of that statute. See Pace, 544 U.S. at 417.

25    The AEDPA statute of limitations is subject to equitable tolling. Holland v. Florida, 560

26    U.S. 631, 649 (2010). Equitable tolling is appropriate if the petitioner can show: (1) that she has

27    been pursuing her rights diligently, and (2) that some extraordinary circumstance stood in her way

28    and prevented timely filing. Id. "[E]quitable tolling is unavailable in most cases." Miles v. Prunty,

187 F.3d 1104, 1107 (9th Cir. 1999) (citing Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1288–89 (9th Cir. 1987)). "[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir.), cert. denied, 531 U.S. 878 (2000)). The petitioner has the burden of proof on this "extraordinary exclusion." Id. at 1065. The petitioner must demonstrate a causal relationship between the extraordinary circumstance and the lateness of the filing. See e.g., Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003); Bryant v. Ariz. Att'y Gen., 499 F.3d 1056, 1061 (9th Cir. 2007). The question "whether there are grounds for equitable tolling [is] highly fact dependent." Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000).

Hiller argues that she should be granted equitable tolling of the AEDPA limitations period because she was abandoned by her appellate counsel, and her counsel did not inform her when her direct appeal was concluded, causing her to file an untimely state habeas action, which, being untimely, did not toll the AEDPA limitations period. See ECF No. 76 at 17–24.

The Supreme Court has held that a petitioner "cannot be charged with the acts or omissions of an attorney who has abandoned [her]." Maples v. Thomas, 565 U.S. 266, 283 (2012); see also Gibbs v. Legrand, 767 F.3d 879, 885 n.5 (9th Cir. 2014) (noting that Maples involved cause for procedural default rather than equitable tolling, but that the Supreme Court saw "no reason" why the distinction between attorney negligence and attorney abandonment should not hold in both contexts) (citing Maples, 565 U.S. 282, n.7)). An attorney's failure to inform a habeas petitioner that a state-court proceeding concluded, affecting the petitioner's ability to bring a federal habeas action, may constitute abandonment and constitute extraordinary circumstances warranting equitable tolling. See Gibbs, 767 F.3d at 886–88; see also Perez v. Reubart, --- F.3d ---, 2025 WL 2473006 (9th Cir. Aug. 28, 2025); Rudin v. Myles, 781 F.3d 1043, 1055 (9th Cir. 2015).

Adam Gill was Hiller's trial counsel as well as her appellate counsel; he filed the notice of appeal from the judgment of conviction on Hiller's behalf, and he represented Hiller throughout her direct appeal. See ECF Nos. 57-12, 57-25. On July 26, 2016, the Nevada Court of Appeals issued its order of affirmance on Hiller's direct appeal. ECF No. 57-31. The order of affirmance

1    was sent to Gill. Id. at 4. However, Gill did not notify Hiller of the conclusion of her direct appeal.

2    As Hiller attests in her declaration:

3          I called Gill's office for an update regarding my appeal on
           November 1, 2016, and was told there was none. I called again on
4          or about December 15, 2016, and was advised again that there were
           no updates, and to call back after the holidays. I called numerous
5          times on or about January 15, 2017, but all my calls were refused.

6          On or about March 21, 2017, I wrote a letter to Gill regarding my
           appeal and begged him to respond. He did not. It was not until on or
7          about July 1, 2017, that I was able to find Walter Ludwig, friend[,]
           to search my case on the internet.
8
           The next day, July 2, 2017, I was informed that my appeal was
9          denied on August 29, 2016. I never received any correspondence
           from the courts or Gill regarding my appeal being denied.
10         Immediately, I requested an appointment in the law library at the
           women's prison.
11
           I began drafting my state petition with the assistance of [   ]. My
12         state petition was filed on October 13, 2017, within four months of
           learning that my appeal was denied. Remittitur was issued on
13         November 19, 2018.

14         As soon as the state case was finished, I immediately began working
           on the federal petition. I mailed it on January 30, 2019, within three
15         months after the remittitur was issued in state court.

16
     ECF No. 77-1 at ¶¶ 6–10; see also ECF No. 58-7 at 10–12 (in her pro se habeas petition in her first
17
     state habeas action, signed under penalty of perjury, Hiller made essentially the same allegations
18
     about her attempts to obtain information about her appeal from her counsel by calling his office
19
     on or about November 1 and December 15, 2016, and January 15, 2017, and writing to him on
20
     March 21, 2017); ECF No. 58-19 at 5, 7, 12 (in her pro se informal brief on appeal in her first state
21
     habeas action, signed under penalty of perjury, Hiller stated: "On August 29, 2016, my appeal was
22
     denied. That which I was never informed of." (as in original, including the emphasis), and Hiller
23
     stated: "I was never informed that my appeal was denied. The few times I was able to reach my
24
     lawyer's office, I was told that there was not yet any word on my appeal, when in fact the appeal
25
     had already been denied."). Two weeks after finally learning that her appeal had concluded, Hiller
26
     submitted a request on July 16, 2017, for an appointment at the prison law library. ECF No. 58-3
27
     at 6. She received an appointment for July 20, 2017. Id. On September 1, 2017, Hiller filed a
28
     request for an extension of time to file her state habeas petition, and an affidavit explaining that

she was unable to reach her attorney. ECF Nos. 58-4, 58-5. Hiller then filed her state habeas petition on October 13, 2017, a little over three months after she learned that her direct appeal had concluded. ECF No. 58-7. Hiller's first state habeas action concluded on November 19, 2018, when the remittitur issued after the Nevada Court of Appeals affirmed the denial of Hiller's petition as procedurally barred. ECF No. 58-23. Hiller then immediately began preparing her federal habeas petition and submitted it for filing less than three months later. ECF No. 6.

Respondents do not contest Hiller's attestation that Gill did not inform her when her direct appeal was concluded and did not respond to her inquiries about the status of her appeal. See ECF No. 92 at 11–12. Rather, Respondents argue:

> Here, Hiller's counsel's alleged lack of communication regarding the denial of her appeal is, at most, "garden variety" negligence or "excusable neglect." Hiller's counsel did not miss any deadlines with respect to her appeal. Hiller is not entitled to post-conviction counsel, so once Hiller's appeal concluded, her trial/appellate counsel had no further obligation. While Hiller may have appreciate[d] more notice regarding [the] conclusion of her appeal, any lack of notice did not rise to the level of extraordinary circumstance[s], particularly since Hiller could have—and indeed admittedly did—obtain[] information regarding her appeal from other resources.

Id. at 11. The Court disagrees. Gill abandoned Hiller. Hiller had a reasonable expectation that Gill would inform her when the direct appeal concluded—when his representation of her was completed and she would have to proceed on her own to pursue post-conviction relief. Gill did not do so, and that, predictably, caused Hiller to miss the statute of limitations deadline for her state habeas petition, and, in turn, the statute of limitations deadline for her federal petition.

Regarding the question of Hiller's diligence, Respondents argue that when she became concerned about the status of her direct appeal, Hiller:

> could have reached out to the state district court, the Nevada Supreme Court, or the main line for her counsel's firm. She also could have asked others to reach out to her counsel if she was having trouble reaching him from prison. Hiller fails to show any other efforts she made beyond a few phone calls or what efforts she made to timely file a federal petition despite alleged lack of insight into the status of her appeal.

Id. at 12. Here too, the Court disagrees. Gill was Hiller's counsel. She could reasonably have

1    expected Gill to inform her of the status—and particularly, the conclusion—of her appeal. And

2    Hiller was reasonably diligent in attempting to contact Gill to learn the status of her appeal.

3          Respondents also argue:

4              Beginning in August 2017 and through May 2018, Hiller began
               filing various *pro se* pleadings in state court, including her initial
5              state habeas petition, the notice of appeal from denial of her state
               petition, and an informal brief in the Nevada Supreme Court.
6              Despite her various filings, she neglected to file a federal petition
               until April 2019, a year and a half after the conclusion of her
7              AEDPA limitations period. A reasonably diligent petitioner would
               have turned her attention from her state court case to her federal case
8              with a looming statute of limitations.

9    Id. The Court rejects this argument as well. Hiller could reasonably have expected that she should

10   complete her first state habeas action before initiating a federal habeas petition. See Gibbs, 767

11   F.3d at 890-91 ("The notion that Gibbs should have prepared his own habeas petition . . . even

12   while he believed his Nevada Supreme Court case was still pending and many of his federal claims

13   therefore unexhausted, is no stronger. To expect Gibbs to have done so improperly raises the

14   standard from 'reasonable' to 'maximum feasible' diligence." (quoting Holland, 560 U.S. at 653)).

15   The Court finds Hiller diligently pursued her state habeas action, and, when it was concluded, she

16   acted with reasonable diligence in initiating this federal habeas action.

17          The Court thus determines that Hiller has shown that her appellate counsel abandoned her

18   and failed to notify her that her direct appeal had concluded, and that this was an extraordinary

19   circumstance preventing Hiller from timely initiating her first state habeas action, and, in turn,

20   preventing her from meeting the AEDPA limitations deadline for her federal habeas petition. The

21   Court determines that Hiller demonstrates that she acted reasonably diligently at all relevant times,

22   including after learning of the conclusion of her direct appeal.

23          Accordingly, the Court grants Hiller equitable tolling from October 25, 2016, the date on

24   which the AEDPA limitations period otherwise would have begun to run, to January 30, 2019, the

25   date on which Hiller initiated her federal habeas action. With this equitable tolling, Hiller's *pro se*

26   original petition and her counseled first amended petition were both timely filed.

27          The question then becomes whether the claims in Hiller's untimely Third Amended

28   Petition relate back to the filing of either her original petition or her first amended petition. A

1   federal habeas petition "may be amended or supplemented as provided in the rules of procedure

2   applicable to civil actions." 28 U.S.C. § 2242. Under Federal Rule of Civil Procedure 15(c), the

3   petitioner may include an otherwise untimely claim in an amended habeas petition if it relates back

4   to a claim in a timely filed petition. A claim relates back if the claim in the amended petition "arose

5   out of the conduct, transaction, or occurrence set out" in the earlier petition. Fed. R. Civ. P.

6   15(c)(1)(B). In Mayle v. Felix, 545 U.S. 644 (2005), The Supreme Court explained that Rule 15(c)

7   permits relation back in federal habeas petitions only when new claims "arise from the same core

8   facts as the timely filed claims, and not when the new claims depend upon events separate in both

9   time and type from the originally raised episodes." Mayle, 545 U.S. at 657 (internal quotation

10  marks omitted). The Court addresses the timeliness of each Ground in Hiller's Third Amended

11  Petition in turn.

12          **i.  *Ground 1***

13          In Ground 1 of her Third Amended Petition, Hiller claims her federal constitutional rights

14  were violated because the prosecution committed misconduct during closing arguments. ECF No.

15  46 at 5–6. Specifically, Hiller claims that, during closing arguments, the prosecutor expressed his

16  own personal opinion that Hiller's co-defendant, Zachariah Luz, testified untruthfully. *Id*. Hiller

17  asserted this same claim in her first amended petition. ECF No. 12 at 6–8. Ground 1 thus relates

18  back to Hiller's first amended petition and is not time-barred.

19          **ii.  *Ground 2***

20          In Ground 2, Hiller claims her federal constitutional rights were violated because she

21  received ineffective assistance of trial counsel on account of her counsel's failure "to investigate

22  and fully present Ms. Hiller's defense that she was innocent because she was working with

23  Detective Queen." ECF No. 46 at 6; see generally id. at 6–21. In Ground 1 of her original petition,

24  Hiller claimed that she received ineffective assistance of her trial counsel in part because her

25  counsel received information from Hiller's sister, Jean, that would have shown her innocence, but

26  her counsel did not follow up on that information and did not call Jean to testify at trial or otherwise

27  present at trial the information Jean provided. ECF No. 6 at 3. And, in Ground 4 of her first

28  amended petition, Hiller incorporated that same claim and added detailed allegations about her

1    work with Queen. ECF No. 12 at 17, 23–31. The Court determines that Ground 2 of Hiller's third

2    amended petition shares a common core of operative fact with Ground 1 of her original petition

3    and Ground 4 of her first amended petition. Ground 2 therefore relates back to the filing of those

4    two timely petitions and is not barred by the statute of limitations.

5            ###    iii.  *Ground 3*

6            In Ground 3, Hiller claims her federal constitutional rights were violated because "the State

7    suppressed material and favorable evidence showing that Hiller was working for Detective

8    Queen," and "the State knowingly presented false evidence at trial." ECF No. 46 at 21; see

9    generally id. at 21–34. Ground 3 includes a claim under Brady v. Maryland, 373 U.S. 83, 87 (1963)

10   and a claim under Napue v. Illinois, 360 U.S. 264, 269 (1959). Ground 3 arises from the same core

11   operative facts as Ground 2, and therefore, like Ground 2, relates back to the filing of Hiller's

12   original and first amended petitions and is not barred by the statute of limitations.

13           The Court determines, therefore, that none of Hiller's claims are barred by the AEDPA

14   statute of limitations. The Court thus denies Respondents' motion to dismiss to the extent the

15   motion is based on the statute of limitations. The Court need not and does not here reach Hiller's

16   other arguments regarding the statute of limitations—her argument regarding the commencement

17   of the running of the statute of limitations with respect to Ground 3, and her argument that she can

18   overcome any statute of limitations bar by a showing of actual innocence. See ECF No 76 at 8–

19   17.

20           **B.  Procedural Default**

21           Hiller argues in her opposition to the motion to dismiss:

22                   First, with respect to Ground Three, this Court can review the merits
                     of the claim because the Nevada Supreme Court's decision on the
23                   Brady/Napue issue asserted under this ground was not independent
                     of federal constitutional law. Alternatively, Janet [Hiller] will prove
24                   cause for the procedural default based upon the State's suppression
                     of the favorable Brady evidence. She can also prove prejudice. With
25                   respect to Ground Two, Janet can show cause and prejudice to
                     overcome the default under Martinez. With respect to Grounds Two
26                   and Three, this Court can review the merits of these grounds because
                     Janet can establish she is actually innocent.
27

28   ECF No. 76 at 27; see also generally id. at 26–39. The Court determines that the arguments

regarding the alleged procedural default of Grounds 2 and 3 are intertwined with the merits of Hiller's claims, such that the procedural default issues will be better addressed after Respondents file an answer and Hiller files a reply. The Court will therefore deny Respondents' motion to dismiss without prejudice to Respondents asserting the procedural default defense to Grounds 2 and 3 in their answer, along with their arguments on the merits of Hiller's claims.

### C. Motions for Discovery and Evidentiary Hearing

In conjunction with her opposition to Respondents' motion to dismiss, Hiller filed a motion for leave to conduct discovery and a motion for evidentiary hearing. ECF Nos. 79, 81. As the Court denies the motion to dismiss without need for further evidentiary development, the Court denies those motions without prejudice. Under the scheduling order in this case, Hiller may move for leave to conduct discovery and/or for an evidentiary hearing relative to the merits of her claims, when she files a reply to Respondents' answer. ECF No. 50 at 2–3.

### IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that Respondents' motion to dismiss (ECF No. 66) is **DENIED without prejudice** to Respondents asserting the procedural default defense to Grounds 2 and 3 in their answer, along with their arguments on the merits of Hiller's claims.

**IT IS FURTHER ORDERED** that Petitioner's Second Motion for Discovery (ECF No. 79) is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Evidentiary Hearing (ECF No. 81) is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that Respondents will have 90 days from the entry of this order to file an answer. In all other respects, the schedule for further proceedings set forth in the order entered December 22, 2023 (ECF No. 50) remains in effect.

**DATED**: September 30, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**